# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DOUGLAS REEVES,**<br>    **Plaintiff,**<br><br>    v.<br><br>**THE TRAVELERS COMPANIES d/b/a TRAVELERS,**<br><br>    **Defendant.** | **CIVIL ACTION**<br><br><br>**NO. 16-6448** |

## MEMORANDUM RE: MOTION FOR SUMMARY JUDGMENT

**Baylson, J.**                                                                                                                                                              **October 30, 2017**

## I.    Introduction

On June 25, 2015, Plaintiff Douglas Reeves, a trades helper in the City of Philadelphia Street Lighting Department, was injured in a car accident while a passenger in a city-owned truck. At the time of the accident, he was on his way from a work meeting to that day's job site. After settling a personal injury claim against the driver of the other car, he sought underinsured motorist benefits from Defendant Travelers Companies, which were denied. The Court now **GRANTS** Defendant's motion for summary judgment (ECF 17).

## II.    Background

From 2012 to the date of the accident on June 25, 2015, Plaintiff Douglas Reeves ("Plaintiff") worked as a "trades helper" assisting electronic technicians in the City of Philadelphia Street Lighting Department ("Department"). (ECF 17-2 at 65). At the time of the accident, Plaintiff lived in Philadelphia with his mother. A 2006 Mercury Mariner was jointly titled in Plaintiff's and his mother's names, insured by Defendant Travelers Companies ("Defendant") pursuant to Policy No. 984318670 101 1 ("the Policy") (ECF 17-2 at 1). Plaintiff

testified that although only his mother was listed on the Policy and paid the premiums, he alone drove the Mariner. (Id. at 59-61).

On a typical work day, he would drive to the Department offices and maintenance facility at 701 Ramona Street, where a supervisor would pass out a "trouble report" describing an issue with street lighting somewhere in the city of Philadelphia. (Id. at 70-74). After assembling the necessary supplies, such as light bulbs, from a warehouse, he would load a Department truck to travel to the job site. (Id. at 74-75). At the time of the accident in June 2015, the fleet consisted of roughly seventeen vehicles of various types: seven bucket trucks, two utility trucks, two line trucks, and six pickup trucks. (ECF 17-3 at 48). Plaintiff, who did not use the same truck every day, was assigned by one of his superiors to one of these trucks depending on the task to be done. (ECF 17-2 at 77). Plaintiff estimated that he stayed behind at the Ramona Street location only once or twice per month; on all other work days he worked at remote job sites. (Id.). He also estimated that he would drive city-owned trucks "maybe once or twice" a month, or 10% of the time; the remainder of the time he rode as a passenger. (Id. at 83-84). Because he lacked a commercial driver's license, he was unable to drive all but a few of the trucks in the fleet. (Id. at 84-85).

On the day of the accident, Plaintiff was a passenger in a city-owned truck driven by a co-worker. (Id. at 89). While stopped on JFK Boulevard, the truck in which Plaintiff was traveling was struck by another vehicle, causing a lower back injury and nerve damage to Plaintiff, for which he is still being treated. (ECF at 17-3 at 31). Plaintiff subsequently missed some five weeks of work. (ECF 17-2 at 93).

Plaintiff settled a tort claim against the driver, and then sought underinsured motorist benefits from Defendant under the terms of the Policy on January 7, 2016 (ECF 17-4 at 3). On

February 4, 2016, Defendant denied coverage by letter to Plaintiff, invoking the "regular use exception":

> **EXCLUSIONS**
>
> B.    We do not provide Uninsured Motorists Coverage or Underinsured Motorists Coverage for "bodily injury" sustained:
> 1. By you while "occupying" or when struck by, any motor vehicle you own or that is furnished or available for your regular use which is not insured for this coverage under this policy. . . .
> 2. By a "family member":
>     a. Who owns an auto while "occupying", or when struck by, any motor vehicle owned by, or furnished or available for the regular use of, you or any "family member" which is not insured for this coverage under this policy.

(ECF 17-4 at 4-5, ECF 1 at 26).

## III. Procedural History

On November 9, 2016, Plaintiff filed suit in the Court of Common Pleas of Philadelphia County, alleging breach of contract and bad faith in handling his insurance claim. (ECF 1 at 13-60). Defendant timely removed to this Court. (Id. at 6-11). On April 11, 2017, the Court denied Defendant's motion to bifurcate proceedings and stay proceedings on the bad faith claim. (ECF 15, 16). Defendant's motion for summary judgment is presently before the Court. (ECF 17).

## IV. Legal Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At the summary judgment stage, "courts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the … motion.'" Scott v. Harris, 550 U.S. 372, 378 (2007) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

## V. Discussion

A.  **Breach of contract**

The facts of this case are not in dispute. The parties disagree only on whether Defendant properly denied coverage for Plaintiff's accident of June 25, 2015 under the "regular use" exception in the Policy.

To prevail on a contract claim under Pennsylvania law, a plaintiff must show "(1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages." Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C., 137 A.3d 1247, 1258 (Pa. 2016). "The task of interpreting [an insurance] contract is generally performed by a court rather than by a jury." 401 Fourth St., Inc. v. Inv'rs Ins. Grp., 879 A.2d 166, 171 (Pa. 2005) (alteration original). When the terms of an insurance policy are "clear and unambiguous, the court is bound to give effect to the policy and cannot interpret the policy to mean anything other than 'what it says.'" Clarke v. MMG Ins. Co., 100 A.3d 271, 275 (Pa. Super. Ct. 2014) (quoting Nationwide Mut. Ins. Co. v. Cummings, 652 A.2d 1338, 1342 (Pa. Super. Ct. 1994)). The relevant Policy language is as follows:

> B.  We do not provide Uninsured Motorists Coverage or Underinsured Motorists Coverage for "bodily injury" sustained:
> 1.  By you while "occupying" or when struck by, any motor vehicle you own or that is furnished or available for your regular use which is not insured for this coverage under this policy. . . .
> 2.  By a "family member":
>     a. Who owns an auto while "occupying", or when struck by, any motor vehicle owned by, <u>or furnished or available for the regular use of, you or any "family member"</u> which is not insured for this coverage under this policy.

(ECF 17-2 at 9-10) (emphasis added).

For decades, both state and federal courts have found nearly identical language to be unambiguous. See, e.g., Nationwide Mut. Ins. Co. v. Shoemaker, 965 F. Supp. 700, 703 (E.D. Pa. 1997); Crum & Forster Pers. Ins. Co. v. Travelers Corp., 631 A.2d 671, 673 (Pa. Super. Ct.

4

1993). Pennsylvania Courts contrast regular or habitual use, which is covered by this sort of exception, with "occasional or incidental use," which is not. See Crum & Forster, 631 A.2d at 673. The Pennsylvania Supreme Court has also held that "regular use" exceptions to automobile insurance contracts do not violate public policy. Burstein v. Prudential Prop. & Cas. Ins. Co., 809 A.2d 204, 210 (Pa. 2002).

Thus, where the facts of the case at hand fall within a "regular use" exception, courts will enforce the contract language in favor of the insurer. See, e.g., Calhoun v. Prudential Gen. Ins. Co., No. CIV. 1CV-04-1576, 2005 WL 1154599 (M.D. Pa. May 5, 2005); Prudential Prop. & Cas. Ins. Co. v. Armstrong, No. CIV.A.03-4575, 2004 WL 603416 (E.D. Pa. Mar. 24, 2004). Courts have frequently applied "regular use" exceptions where an accident occurred while an insured was occupying an employer-owned vehicle. See, e.g., Erie Ins. Grp. v. Catania, 95 A.3d 320, 322 (Pa. Super. 2014) (delivery truck); Armstrong, 2004 WL 603416 at *4 (park commission vehicle); Burstein, 570 Pa. at 179 (vehicle provided as a benefit of employment). "[A]n employee "regularly uses" a fleet vehicle if he regularly or habitually has access to vehicles in that fleet. Regular use of any particular vehicle is not required." Dixon v. GEICO, 1 A.3d 921, 926 (Pa. Super. Ct. 2010) (quoting Brink v. Erie Ins. Grp., 940 A.2d 528, 535 (Pa. Super. Ct. 2008) (internal quotations and citations omitted).

Plaintiff, who testified that he drove or rode in a Department vehicle on at least 90% of workdays, all but concedes the issue of regularity when he argues that "Philadelphia has many street lights and the only way to service them is to drive to their location." (ECF 22-1 at 6). Plaintiff argues that the regular use exception nevertheless should not apply because he performed his core duties as a trades helper outside the truck in which he was riding at the time of the accident, and was allowed to drive only three out of seventeen vehicles in the Department

5

fleet. Although situations often arise where an insured, such as a police officer, is injured while riding in a vehicle in which he carries out essential job functions, courts have applied "regular use" exceptions where the insured was injured while traveling to a job site where the work would be performed outside the vehicle. See Armstrong, 2004 WL 603416 at *1 (park employee, who was not allowed to drive park commission vehicles, injured on the way to a job site); Costello v. Gov't Employees Ins. Co., No. 3:CV-09-1246, 2010 WL 1254273, at *1 (M.D. Pa. Mar. 25, 2010) (plaintiff employed as an auditor). Moreover, courts have regularly applied the term "regular use" to apply to passengers as well as drivers of non-owned vehicles. Armstrong, 2004 WL 603416; Prudential Prop. & Cas. Ins. Co. v. Peppelman, No. CIV.A.02-1515, 2003 WL 25795214, at *1 (E.D. Pa. Apr. 25, 2003). Plaintiff does not meaningfully address, much less distinguish, this case law.[1]

Plaintiff may have a point that the application of "regular use" exceptions may have expanded far beyond the scenario posited in Crum & Forster of a "family…regularly driving two or more cars for the price of one policy." 631 A.2d at 673. These exceptions can "effectively suspend[] the great majority of [uninsured/underinsured motorist] coverage for the insured employee whose office is his employer-owned vehicle and whose workday is on the road." Decker v. Nationwide Mut. Ins. Co., No. 05 CV 1863, 2007 WL 4698041 (Pa. Com. Pl. Apr. 16, 2007). However, that result alone does not allow this Court to rewrite the terms of a valid, enforceable, unambiguous contract. See Clarke, 100 A.3d at 278 ("[p]ublic policy concerns are always secondary to the 'clear and unambiguous [terms of a] contract,' which 'must be given its plain meaning'") (quoting Eichelman v. Nationwide Ins. Co., 711 A.2d 1006, 1008 (Pa. 1998)).

---

[1] Plaintiff further argues that this situation did not represent a situation of "uncompensated risk" because Defendant knew that he worked for the City of Philadelphia and knew or should have known that he would have to drive to job sites across the city. However, he does not provide any record support for this assertion.

6

Thus, Defendant properly denied coverage for Plaintiff's June 25, 2015 accident and was not in breach of contract. Defendant is entitled to summary judgment on Count I.

B.   **Bad Faith**

Plaintiff does not address the issue of bad faith in his opposition to Defendant's summary judgment motion. When a party opposing summary judgment responds to a summary judgment motion "but fails to address the substance of any challenge to particular claims, that failure "constitutes an abandonment of th[o]se causes of action and essentially acts as a waiver of these issues." Campbell v. Jefferson Univ. Physicians, 22 F. Supp. 3d 478, 487 (E.D. Pa. 2014) (alteration original); accord Morello v. Kenco Toyota Lift, 142 F. Supp. 3d 378, 381 n. 3-4 (E.D. Pa. 2015).

Even were that not the case, summary judgment is warranted on Plaintiff's bad faith claim. Under the Pennsylvania bad faith statute, 42 Pa. Const. Stat. § 8371, the party "seeking to prove a bad faith claim must establish by clear and convincing evidence that the insurance company acted in bad faith without a reasonable basis for denying the claim, and that it knowingly or recklessly disregarded its lack of a reasonable basis to do so." Lockhart v. State Farm Mut. Auto. Ins. Co., 410 F. App'x 484, 485–86 (3d Cir. 2011).

Within approximately four weeks of being notified of Plaintiff's claim, Defendant apparently investigated and denied his claim on the basis of a reasonable reading of the Policy language and the law applicable to such situations. See (ECF 17-4 at 1-5). In such circumstances, there is no basis for finding that Defendant acted in bad faith, and summary judgment is proper. Costello, 2010 WL 1254273 at *9.

**VI.   Conclusion**

Defendant's Motion for Summary Judgment (ECF 17) is hereby **GRANTED**. An appropriate order follows.

O:\CIVIL 16\16-6448 Reeves v Travelers\16cv6448 MSJ Memo.docx